**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANTONIO MCDOWELL, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 25 CV 14635 |
| | ) | |
| v. | ) | Hon. Judge Elaine E. Bucklo |
| | ) | |
| REYNALDO GUEVARA, *et al.* | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**DEFENDANTS CLINE, MINGEY, AND BIEBEL'S
REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

Defendants Philip J. Cline, Edward Mingey, and Robert Biebel (collectively the "Supervising Defendants"), by their attorneys, THE SOTOS LAW FIRM, P.C., pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully submit this reply in support of their Motion to Dismiss Plaintiff Antonio McDowell's Complaint (the "Motion"), and state as follows:

**INTRODUCTION**

Under each of McDowell's claims, a defendant can only be held responsible for his own actions. This applies to the investigating police officers McDowell accuses of misconduct, as well as the Supervising Defendants. From that baseline, rather than parse—even roughly—individual actions taken by individual defendants, McDowell simply lumps all Defendants together and asserts they are collectively liable. The law does not allow this.

In their Motion (Dkt. 59), the Supervising Defendants explained that only two paragraphs of McDowell's Complaint raise allegations against them, and those allegations fail to state a claim because they are conclusory. In response (Dkt. 65), McDowell conflates these two allegations with over one hundred paragraphs in the Complaint describing the conduct of unspecified "Defendants," and argues allegations against all of them suffice as specific allegations against each of them. This treatment is not only imprecise and misleading, it is legally deficient. Examined on their own merit, as they must be, the two, conclusory allegations against the Supervising Defendants fail to state a claim, so all counts against them should be dismissed.

## ARGUMENT

**I.      McDowell's Group Pleading Does Not Put the Supervising Defendants on Notice of the Claims Against Them.**

Despite McDowell's attempt to recast over one hundred allegations against "Defendants" as somehow directed specifically at Cline, Mingey, and Biebel, the Complaint is a textbook example of group pleading. As explained below, this is insufficient to state a claim under these circumstances.

**A.      The Court should reject McDowell's attempt to misrepresent unspecified group allegations as specific allegations.**

As the Supervising Defendants explained in their Motion, only two paragraphs of the Complaint contain allegations of misconduct directed at them. (Dkt. 59 at 3–5, citing Dkt. 1, ¶¶ 20, 75.) Rather than accept this reality, McDowell's response references a litany

2

of allegations directed at unspecified "Defendants" and misleadingly adds the phrase "including Biebel, Mingey, and Cline," which is *not* found in his Complaint. (*Compare* Dkt. 65 at 3–4, 6, *with* Dkt. 1, ¶¶ 41, 42, 57, 60, 79, 89, 91.)

Similarly, McDowell's response inaccurately states that *fourteen* paragraphs of the Complaint are directed at "Moving Defendants" when that plainly is not the case. (Dkt. 65 at 8–9, citing Dkt. 1, ¶¶ 78–87, 92, 154–55, 173.)[1] It also broadly seeks to implicate the Moving Defendants in over *one hundred* paragraphs alleging misconduct by *other* Defendants simply by arguing that they "knowingly approved" the misconduct, "improperly supervised" their subordinates, or "improperly cooperated" with their subordinates. (Dkt. 65 at 13–15, citing Dkt. 1, ¶¶ 22–104; 190–211.)[2]

The Court should not fall for McDowell's misdirection. Aside from paragraphs 20 and 75 of the Complaint—which are conclusory and therefore insufficient, as explained in the Motion and below—all other allegations McDowell attempts to pin on the Supervising Defendants are the sole product of impermissible group pleading.

---

[1] Supervising Defendants acknowledge that paragraph 75 of the Complaint, cited in McDowell's response at pages 8–9, is directed against them and, despite its conclusory nature, is not one of the fourteen misleading citations.

[2] Supervising Defendants acknowledge that paragraph 20 of the Complaint, cited in McDowell's response at pages 13-15, is directed against them and, despite its conclusory nature, is not one of the over one hundred misleading citations.

### B. Group pleading is neither necessary nor appropriate here.

As the Seventh Circuit has made clear, "[e]ach defendant is entitled to know what he or she did that is asserted to be wrongful." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). "A contention that 'the defendants [wronged the plaintiff]'—without any details about who did what—is inadequate." *Id*. "A complaint based on a theory of collective responsibility ***must be dismissed***," "even for allegations of conspiracy." *Id.* (emphasis added).

Group pleading is generally disallowed unless a plaintiff demonstrates that he "may not be able to specify which individual committed which parts of the alleged misconduct before the benefit of discovery." *Kuri v. City of Chicago*, 2014 WL 114283, at *7 (N.D. Ill. Jan. 10, 2014); *see Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009) (explaining group pleading is allowed only in limited cases where "opportunities for conducting a pre-complaint inquiry are . . . virtually nil" or where "identification of the responsible party may be impossible without pretrial discovery"); *accord Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986) (holding an "*individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.") (emphasis in original).

Here, McDowell is provably capable of alleging with specificity which Defendants took particular actions. This is clear from allegations in his own Complaint, along with

4

the indisputable procedural history. As a result, none of McDowell's cited authority remotely suggests group pleading is appropriate here.

### 1. McDowell can, and does, allege specific conduct by specific Defendants when it suits him.

McDowell's Complaint repeatedly demonstrates he is fully capable of attributing specific conduct to specific Defendants. For example, McDowell alleges: "Defendant Guevara knowingly manufactured Medina's false photo identification and knowingly fabricated an accompanying false police report" (Dkt. 1, ¶ 64); "Defendants Guevara and Halvorsen knew that the few details Varela and Morales-Santana had been able to give detectives about the perpetrator at the time of the crime did not match Plaintiff" (*Id*. ¶ 65); "Defendants Guevara and Halvorsen coerced Varela and Morales-Santana to falsely identify a photo of Plaintiff as the perpetrator" (*Id*. ¶ 68); and "Defendant Guevara tried to extract a false confession from Plaintiff." (*Id*. ¶ 76.) McDowell's specificity in alleging misconduct by *other* Defendants makes the dearth of allegations tied to the Supervising Defendants especially glaring.

Moreover, the Complaint expressly treats the "Supervising Defendants" (a term *he* first coined, at Dkt. 1, ¶ 75) as entirely separate from their subordinate officers. Indeed, paragraph 75 alleges this distinction plainly, despite Plaintiff's unsupported attempt to ignore the distinction when arguing otherwise. (Dkt. 1, ¶ 75: "Supervising Defendants Mingey, Biebel, and Cline knew that the Detective Defendants had coerced and fabricated the false identifications of Plaintiff made by [three witnesses] despite the witnesses'

5

protestations that they could not make an identification. Nonetheless, the [S]upervising Defendants approved the false police reports—knowing their falsity.")

By McDowell's own account, then, the Supervising Defendants did not *themselves* engage in coercion and fabrication. Yet he asserts just the opposite in his response brief by sweeping the Supervising Defendants in with the Detective Defendants through the artfully simplified global term, "Defendants." The Court should not allow McDowell to ignore the distinction he drew among Defendants in this way. Instead, the Court should consider only paragraphs 20 and 75 of the Complaint as alleging misconduct by the Supervising Defendants and assess whether the suffice to state a claim. As explained in the Motion and below, they do not.

> **2.      Twenty-six years of litigation gave McDowell more than enough information to formulate specific allegations.**

McDowell's ability to link specific conduct to specific Defendants is also evident from the procedural history predating the filing of the Complaint. Indeed, McDowell and his lawyers have, since 1999, exhaustively investigated and litigated the police investigation at issue during McDowell's criminal trial, appeal, and postconviction proceedings. Thus, McDowell has long possessed all reports, testimony, and court opinions detailing which Defendants did or did not participate in particular aspects of the investigation. McDowell has not explained why, after 26 years of litigating these issues, he cannot yet identify an alleged wrongdoer for certain claims in his Complaint. As a result, Plaintiff's attempted reliance on group pleading to save his claims fails.

6

### 3. McDowell's own cited authority demonstrates group pleading is inappropriate here.

McDowell relies on a single case, *Heidelberg v. Manias*, to make the sweepingly inaccurate assertion that "[w]here a complaint 'attributes individual actions to a group of defendants,' courts in this circuit 'read[] the complaint to allege that every one of the defendant[s]' engaged in the alleged misconduct." (Dkt. 65 at 9, quoting *Heidelberg v. Manias*, 503 F. Supp. 3d 758, 785 (C.D. Ill. 2020).)[3] This citation is wildly misleading because *Heidelberg* hardly articulated any such rule. To the contrary, the court merely and appropriately stated that "group pleading does not ***automatically*** require dismissal at the pleading stage," and announced in a passage that was revealingly omitted from McDowell's Response, that it would "assess on a claim-by-claim basis whether group pleading issues prevent each Defendant from receiving the notice he is due." *Heidelberg*, 503 F. Supp. 3d at 785 (emphasis added). That is precisely what the Supervising Defendants are asking of this Court—assess on a claim-by-claim basis if group pleading is sufficient under these specific circumstances, and find that it is not.

## II. The Only Two Allegations Against the Supervising Defendants Are Both Conclusory and Insufficient.

### A. McDowell simply ignored the Supervising Defendants' key cases.

In their Motion (Dkt. 59 at 4), the Supervising Defendants cited *Santana v. Petty*, No. 120CV00343TWPDML, 2020 WL 5077068, at *2 (S.D. Ind. Aug. 26, 2020) and *Horshaw*

---

[3] *Heidelberg*, in turn, quotes *Bolden v. City of Chicago*, 293 F. Supp. 3d 772, 775 n.3 (N.D. Ill. 2017).

*v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018) for the proposition that "supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly." They also cited (Dkt. 59 at 4–5) *Koch* v. *Westerman*, No. CIV.07-CV-0004-MJR, 2009 WL 249222, at *6 (S.D. Ill. Feb. 2, 2009) and *Iwanicki v. Pennsylvania Dep't of Corr.*, 582 F. App'x 75, 78, n.4 (3d Cir. 2014) for the proposition that "a supervisor's after-the-fact knowledge of a constitutional violation committed by a subordinate does not satisfy the personal responsibility requirement of § 1983." McDowell ignored all of these cases, so the asserted principles stand unrefuted.

McDowell's concessions here are critical because after-the-fact-knowledge and, in essence, vicarious liability *are the only specific attacks against the Supervising Defendants*. (*See* Dkt. 1, ¶¶ 20, 75.) As noted above (at 2–7), the Court should not be distracted by McDowell's group allegations or allegations against other Defendants. With that noise quieted, the razor thin allegations against Supervising Defendants in paragraphs 20 and 75 fail to state a claim.

B.      **Despite McDowell's attempted distinctions, *Petrovic*, *Marcinczyk*, and *Jacobson* support dismissal.**

In their Motion, the Supervising Defendants directed the Court to *Petrovic v. City of Chicago*, No. 06 C 6111, 2010 WL 1325709, at *2 (N.D. Ill. Mar. 30, 2010) and *Marcinczyk v. Plewa*, No. 09 C 1997, 2011 WL 2672350, at *2 (N.D. Ill. July 8, 2011) as instructive cases supporting dismissal of McDowell's federal claims, and to *Jacobson v. Nat'l R.R. Passenger*

*Corp.*, No. 97 C 6012, 1999 WL 1101299, at *9 (N.D. Ill. Nov. 29, 1999) as supporting dismissal of McDowell's state law claims.

McDowell's sole point as to *Petrovic* and *Marcinczyk* is that they do not "deal[] with specific allegations that a supervisor knew of a subordinate's misconduct and approved of it anyway, as McDowell alleges here." (Dkt. 65 at 12.) This is wrong. In *Petrovic*, the plaintiff alleged "[t]he Supervisory Defendants oversaw, acquiesced in, and even condoned the above-described policies and practices and refused to take steps to correct them." 2010 WL 1325709, at *5. Acquiescence and condonement require knowledge. Nonetheless, dismissal was appropriate because the plaintiff only "included formulaic recitations of the elements of a supervisor liability claim without any *factual* allegations to create a plausible suggestion that [the supervisors], not merely indirectly approved, but encouraged the specific incident of misconduct . . . or in some way directly participated in the incident." *Id.* (emphasis in original).

Similarly, in *Marcinczyk*, the plaintiff alleged the supervisory defendants "'turned a blind eye to' alleged practices" of their subordinates. 2011 WL 2672350, at *2. Turning a blind eye necessarily means you know about something yet choose to ignore it. Despite that allegation, the court dismissed the supervisors because the plaintiff "fail[ed] to allege any *facts*" supporting the conclusion that the supervisors "turned a blind eye." *Id.* (emphasis added). Thus, contrary to McDowell's suggestion, the courts in both *Petrovic* and *Marcinczyk* considered and found insufficient allegations that supervisors knew of

9

their subordinate officers' misconduct. McDowell's attempted distinction does nothing to undermine the import of either case; both remain instructive and counsel in favor of dismissing McDowell's complaint.

As to *Jacobson*, cited by Supervising Defendants as authority for dismissal of the state law claims (Dkt. 59 at 8), McDowell does not dispute the legal propositions that: (1) "a supervisor is not subject to liability for the conduct of other employees unless he fraudulently or negligently appointed, supervised or cooperated with them"; and (2) "[a plaintiff] must allege, with more than conclusive allegations that [the defendant] was (a) fraudulent, (b) grossly negligent in appointing an agent, or (c) negligent in cooperating with his employees." *Jacobson v. Nat'l R.R. Passenger Corp.*, No. 97 C 6012, 1999 WL 1101299, at *9 (N.D. Ill. Nov. 29, 1999) (citing *Northrop v. Lopatka*, 242 Ill. App. 3d 1, 5, 610 N.E.2d 806, 810 (4th Dist. 1993)). Instead, McDowell simply insists that his allegations are not conclusory, doubling down on a litany of paragraphs from his Complaint that are notable only because they *do not allege specific conduct by any Supervising Defendant*. (Dkt. 65 at 15, citing Dkt. 1 ¶¶ 20, 22–104, 190–211.) As a result, nothing in McDowell's response undermines the persuasive force of *Jacobson*, and the Court should rely on it in dismissing McDowell's state law claims.

### C.     The Court should not follow *Carter* or *Wilson.*

McDowell's response cites *Carter v. City of Chicago*, No. 17-CV-7241, 2018 WL 1726421 (N.D. Ill. Apr. 10, 2018), and *Wilson v. Schawndt*, No. 20-CV-699, 2020 WL 5748258

10

(E.D. Wis. Sept. 24, 2020), to assert that: (i) "a police supervisor is personally responsible for violating an accused person's rights if the supervisor knowingly approves a subordinate's false report incriminating the accused"; and (ii) the Complaint's allegations regarding approval of false reports are not conclusory. (Dkt. 65 at ¶ 10–12.) However, neither case supports McDowell's position here.

First, *Carter* is readily distinguishable because the complaint specifically alleged that, despite full knowledge of rampant criminal activity and citizens' complaints involving the subordinate officers who drafted the false reports—officers known within the community as the "Watts Gang"—the supervisory sergeants took no action to intervene. *Carter*, 2018 WL 1726421, at *1, 6. It was against this specific backdrop that the court greenlit a claim against the sergeants, one of whom approved the false reports. *Id.* at * 1–2.

Here, by stark contrast, McDowell has made no such allegation that, at the time of the underlying investigation in 1996, the supervising Defendants knew of ***any*** alleged criminal activity by the officers or of ***any*** history of civilian complaints against those officers that would have alerted them to the possibility that the reports would be false. Accordingly, McDowell's highlighting of similarities between *Carter* and his case falls flat in light of his total disregard of critical distinctions between the two cases that deprive *Carter* of any persuasive force here.

11

Second, *Wilson* is equally distinguishable but for different reasons. Specifically, the plaintiff in *Wilson* asserted direct personal conduct by the supervisor, specifically that he gave "orders to create a narrative of the crime." (Ex. A, Wilson Amended Complaint, *Wilson v. Schawndt* Dkt. 20, ¶ 57.) These particularized allegations provided a concrete explanation of what the supervisory defendant did wrong, highlighting his direct participation in the alleged constitutional wrongs. Here, by stark contrast, McDowell *never alleges* how the Supervising Defendants participated in any misconduct. For example, he does not allege the Supervising Defendants ordered, initiated, or requested any aspects of the investigation. Instead, all McDowell alleges is after-the-fact approval, which, as noted in the Motion (Dkt. 59 at 4–5) and above (at 8), is not enough, and "participation," which is conclusory. As a result, *Wilson* does not support McDowell's arguments.

### D. McDowell's other cited authority is also unavailing.

McDowell also cites *Iglesias v. Guevara*, No. 19-CV-06508, 2025 WL 3171161, at *8 (N.D. Ill. Nov. 13, 2025) to suggest his bare assertion that approving false reports is sufficient to state a federal claim. This fails. In paving the way for a trial on Defendant Biebel's personal responsibility for certain wrongs in *Iglesias*, the court cited the undisputed facts that Biebel "remained involved and informed of what was going on during the investigation" and "took steps to understand what had occurred during the investigation to ensure reports were accurate." *Iglesias*, 2025 WL 3171611, at *8. Here, by

contrast, McDowell fails to allege any fact against any Supervising Defendants with this level of specificity. At bottom, the fact that another court found evidence against Biebel warranted a trial hardly supports denial of a motion to dismiss a completely different case based on a completely different criminal investigation involving different allegations, when the clear weight of authority requires its dismissal.

As to McDowell's state law claims, he cites *Chuffo v. Ramsey*, 55 F. Supp. 2d 860, 866 (N.D. Ill. 1999) (along with *Heidelberg*, distinguished above at 7) to argue his conclusory allegations are "enough" to state a claim. (Dkt. 65 at 14.) McDowell asserts that, under Illinois law, a "supervisor's 'failure to train and supervise' subordinates is 'directly attributable' to the supervisor." (*Id.*, citing *Chuffo*, 55 F. Supp. 2d at 866.) This misses the mark, however, because McDowell never alleges that Supervising Defendants failed to train and supervise their subordinates. Thus, *Chuffo* is unhelpful.

Accordingly, because each of McDowell's claims against the Supervising Defendants hinges on bare-bones conclusory allegations, each fails at the pleading stage and should be dismissed.

### E.     McDowell wrongly accuses the Supervising Defendants of contesting factual allegations.

Finally, McDowell accuses the Supervising Defendants of exceeding the scope of a Rule 12(b)(6) by "plainly contest[ing] the factual allegations in McDowell's complaint and rely[ing] on supposed facts outside of it." (Dkt. 65 at 12.) They do no such thing. Instead, the Supervising Defendants merely call the Court's attention to the absence of

13

specific allegations against the Supervising Defendants and to the purely conclusory nature of the only two allegations McDowell does assert, and explain why such allegations should not subject them to the myriad of burdens and anxieties attendant to being sued in this case. This is textbook motion-to-dismiss practice, and the Court should not be distracted by McDowell's attempt to reframe what the Supervising Defendants have done in their Motion or what they "mean" to do. (*Id.*)

**CONCLUSION**

For the reasons stated herein and in the Motion, the Court should dismiss all claims against the Supervising Defendants.

Date: June 15, 2026

Respectfully submitted,

/s/ Carl M. Johnson
CARL M. JOHNSON, Atty No. 6317661
Special Assistant Corporation Counsel
*One of the Attorneys for Defendants Philip J. Cline, Edward Mingey, and Robert Biebel*

James G. Sotos
Josh M. Engquist
Jeffrey R. Kivetz
Jeffrey C. Grossich
Carl M. Johnson
Special Assistant Corporation Counsel
**THE SOTOS LAW FIRM, P.C.**
141 W. Jackson Blvd., Suite 1240A
Chicago, IL 60604
Tel: (630) 735-3300
cjohnson@jsotoslaw.com